## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT CINCINNATI

| | | |
|---|---|---|
| GUY JARRETT, | : | Case No. 1:22-cv-456 |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | Judge Matthew W. McFarland |
| | : | Magistrate Judge Stephanie K. Bowman |
| LARRY GREENE, *et al*., | : | |
| | : | |
| Defendants. | : | |

## ORDER and
## REPORT AND RECOMMENDATIONS

Guy Jarrett, an Ohio prisoner, has filed a civil rights complaint against several individuals associated with the Ohio Department of Rehabilitation and Correction (ODRC). (Doc. 1). Jarrett is proceeding here without the benefit of counsel. He has paid the filing fee in full to commence the action. (Doc. 1-1).

In the Complaint, Jarrett alleges that a corrections officer planted drugs in his cell at Southern Ohio Correctional Facility. (Doc. 1, PageID 3-4). He asserts he received "overwhelming" disciplinary sanctions for the drugs, in retaliation for pursuing a criminal appeal. (*Id*., PageID 4-5). Jarrett sought immediate relief from this Court in a motion for a temporary restraining order and preliminary injunction. (Doc. 2). On the Undersigned's recommendation, the Court denied the motion. (Doc. 3, 4).

The matter is now before the Undersigned to screen Jarrett's Complaint as required by 28 U.S.C. § 1915A. For the reasons that follow, the Undersigned will allow one of Jarrett's claims—the claim that an officer planted drugs in the cell—to proceed to further development. The Undersigned **RECOMMENDS** that the Court **DISMISS** the remaining claims.

## I.     <u>INITIAL SCREENING STANDARD</u>

Because Jarrett is a prisoner seeking "redress from a governmental entity or officer or employee of a governmental entity," the Court is required to screen his Complaint.  28 U.S.C. § 1915A(a).  The Court must dismiss the Complaint, or any portion of it, that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b).

To state a claim for relief, a complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The Court must construe the complaint in plaintiff's favor, accept all well-pleaded factual allegations as true, and evaluate whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  However, a complaint that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient.  *Id*. (quoting *Twombly*, 550 U.S. at 555).

In the interest of justice, this Court is also required to construe a pro se complaint liberally and to hold it "to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) and citing Fed. R. Civ. P. 8(f) [now (e)]).  Even with such a liberal construction, a pro se complaint must still adhere to the "basic pleading essentials."  *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).  Specifically, a pro se "complaint 'must contain either direct or inferential allegations respecting all the material elements' to recover under some viable legal theory."

2

*Barhite v. Caruso*, 377 F. App'x 508, 510 (6th Cir. 2010) (quoting *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005)).

## II.   **PARTIES AND CLAIMS**

Plaintiff Jarrett was an inmate at the Southern Ohio Correctional Facility (SOCF) when he filed the Complaint.[1]  (Complaint, ¶ 3).  He names as defendants six individuals affiliated with the ODRC:  (1) Warden's Representative or Warden's Assistant <u>Larry Greene</u>; (2) Corrections Officer <u>Jerrika Leasure</u>; (3) Director of the Bureau of Classification <u>Kerrie Hupka</u>; (4) Unit Manager Administrator, Security Classification Supervisor, and Serious Misconduct Panel (SMP) Chairman <u>J. Oppy</u>; and (5)-(6) Rules Infraction Board members Sergeant <u>Barney</u> and Sergeant <u>Williams</u>.  (Complaint, ¶¶ 4-7, 18-20, 22).

Jarrett alleges in the Complaint that Officer Leasure planted a large amount of drugs in his cell in July 2022, and wrote a false conduct report against him for the drugs.  (Complaint, ¶¶ 4, 11-16; *see also* Conduct Report, Doc. 2-1, PageID 18).  The conduct report was heard by the Rules Infraction Board (RIB) at SOCF.  Specifically, Sergeant Barney and Sergeant Williams heard the matter, found Jarrett guilty, and imposed "overwhelming sanctions" on him. (Complaint, ¶ 17, 21).  The sanctions included 25 days of restrictive housing, a Serious Misconduct Panel (SMP) review (for the purpose of raising his placement level or security classification level from 4-A to 4-B),[2] six-month phone and tablet restriction, six-month J-Pay restriction, 90-day visiting restriction, a separate two-year visiting restriction, 90-day

---

[1] The Undersigned will refer to the Complaint filed as Doc. 1 simply as the Complaint hereafter.  At times, the allegations in the Complaint will be identified by paragraph number rather than PageID number for greater clarity.

[2] Plaintiff may be referring to the Security Classification Levels described in the ODRC's Policy No. 53-CLS-01, "Security Classifications for Incarcerated Persons Levels 1 Through 4," available at https://drc.ohio.gov/policies/classification (accessed October 21, 2022).

commissary, food and sundries restriction, and 90-day television and radio restriction. (Complaint, ¶ 17; *see also* Disposition of the Rules Infraction Board, Doc. 2-1, PageID 19-20).

Jarrett submitted his Complaint shortly after the RIB imposed sanctions. (*See* Complaint, PageID 4, 11 (the RIB hearing was on July 19, 2022; the Complaint was submitted on July 28, 2022)). The SMP review had not yet occurred at that time. (Complaint, ¶ 31). As noted above, Jarrett asked this Court for a temporary restraining order and preliminary injunction to lift these sanctions and prevent the anticipated level increase from becoming effective, but the Court denied his motion. (Doc. 2-4).

Jarrett named some of the Defendants solely to stop the SMP review or its results. For example, he says:

> Defendant J. Oppy is the SMP Panel Chairman, and Plaintiff is only suing him for a T.R.O. to Stay any S.M.P. imposition, until Plaintiff's claims can be more fully assessed.
>
> * * *
>
> Defendant J. Oppy is not in violation of any of Plaintiff's rights. Plaintiff is requesting the Court to stay any execution of a 4-B placement, until his claims can be more fully assessed.

(Complaint, ¶¶ 18, 28). Director Hupka is named for similar reasons:

> Defendant Kerrie Hupka is the Bureau of Classification's Director and Plaintiff is only suing her in her official capacity for a preliminary injunction to stop any and all execution of placement in a 4-B unit.
>
> * * *
>
> Defendant Kerrie Hupka is not in violation of any of Plaintiff's rights, she is just legally in charge of classification and Plaintiff is requesting the Court to stay any execution of a 4-B placement, until his claims can be more fully assessed.

(Complaint, ¶¶ 20, 27).

Larry Greene appears to be named for this reason, and also for "not correcting" the violations. (Complaint, ¶¶ 19, 22). The Complaint describes Greene as the "Warden's Representative" or "Warden's Assistant." (Complaint, ¶¶ 6, 19). Jarrett says:

> Defendant Larry Greene is the Warden's Assistant and Plaintiff is only suing him for a T.R.O. toward execution of any 4-B placement, until Plaintiff's claims can be more fully assessed.

(Complaint, ¶ 19). But Jarrett also says:

> Defendant Larry Greene is personally involved in not correcting the violation of Plaintiff's rights and not enforcing appropriate sanctions, encouraging the violations.

(Complaint, ¶ 22; *see also* ¶¶ 26, 31 (suggesting that Greene also imposed the sanctions)).

It appears that after the Complaint was submitted, Jarrett was transferred from SOCF to Toledo Correctional Institution. *See* Offender Details on the ODRC's website, available at https://appgateway.drc.ohio.gov/OffenderSearch/Search/Details/A653629 (accessed October 20, 2022).

Jarrett brings his claims under 42 U.S.C. § 1983. (Doc. 1, PageID 1). "Section 1983 authorizes a 'suit in equity, or other proper proceeding for redress,' against any person who, under color of state law, 'subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution.'" *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To state a cause of action under § 1983, a plaintiff must allege: "(1) a deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law." *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008) (citation omitted).

Defendants are sued in either their official capacities, or in both their individual and official capacities, as discussed below. (Complaint, ¶ 30). Jarrett raises claims concerning retaliation, access to the courts, discrimination, due process, violations of ODRC policy, cruel

5

and unusual punishment, and deliberate indifference to his mental health and safety, among other things.  (Complaint, ¶¶ 17, 21, 25-29).  These claims are discussed in more detail below.

Jarrett seeks declarative relief and compensatory and punitive damages in varying amounts against various Defendants.  (Complaint, ¶¶ 33-39.1).  He also seeks a temporary restraining order, preliminary injunction, and permanent injunction.  (Complaint, ¶¶ 40-41).

## III.   DISCUSSION

### A.    Official Capacity Claims for Damages

Before discussing the substantive claims, the Undersigned considers the defendants against whom the claims are made.  As noted, Jarrett sues all six Defendants in their official capacities, and four Defendants (Leasure, Barney, Williams, and Greene) in their individual (or personal) capacities as well.  (Complaint, ¶ 30).[3]  Jarrett seeks monetary damages against all Defendants jointly and severally, and against certain Defendants in certain amounts.  (Complaint, ¶¶ 34-39.1).

"While '[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law,' individuals sued in their official capacities stand in the shoes of the entity they represent."  *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)).  Thus, "[a] suit against an individual in his official capacity is the equivalent of a suit against the governmental entity."  *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) (citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 68 (1989)).   Here, the Complaint suggests that all the Defendants are

---

[3] Leasure is sued in her official and individual capacity.  (Complaint, ¶ 4).  Barney and Williams are sued in their official and individual capacities.  (*Id.*, ¶¶ 7.1, 7.2, 29).  Greene is sued in his official and individual capacity.  (*Id.*, ¶ 6).  Hupka is sued in her official capacity only.  (*Id.*, ¶ 5).  Oppy appears to be sued in his official capacity only.  (*Id.*, ¶¶ 7, 18, 28).  *See Vittetoe v. Blount Cnty., Tenn.*, 861 F. App'x 843, 851 (6th Cir. 2021) ("We assume that a government official is being sued in his official capacity, unless the pleadings provide notice that he is being sued individually.").

working for the ODRC, which is an agency of the State of Ohio. (Complaint, ¶¶ 4-7.2). *See Fields v. Ohio Dep't of Rehab. & Corr.*, No. 2:15-cv-1271, 2015 WL 6755310, at *3 (S.D. Ohio Nov. 4, 2015).

Claims for damages against the State of Ohio are barred by the Eleventh Amendment to the United States Constitution, which "'denies to the federal courts authority to entertain a suit brought by private parties against a state without its consent.'" *Maben v. Thelen*, 887 F.3d 252, 270 (6th Cir. 2018) (quoting *Ford Motor Co. v. Dep't of Treasury of Indiana*, 323 U.S. 459, 464 (1945)). "The [United States Supreme] Court has held that, absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court." *Maben*, 887 F.3d. at 270, (quoting *Kentucky v. Graham*, 473 U.S. at 169). Here, "because Ohio has not consented to suits in federal court nor has Congress abrogated Ohio's immunity under § 1983," the State of Ohio has immunity for claims against it. *Smith v. DeWine*, 476 F. Supp. 3d 635, 652 (S.D. Ohio 2020) (citing *Ohio v. Madeline Marie Nursing Homes # 1 & # 2*, 694 F.2d 449, 460 (6th Cir. 1984) and *Giles v. Univ. of Toledo*, 478 F. Supp. 2d 924, 960-61 (N.D. Ohio 2007)).

This immunity "extends to state officials sued in their official capacity" for damages, such as is pursued here. (Complaint, ¶ 39.1). *Smith v. DeWine*, 476 F. Supp. 3d at 650-51. Again, this is because "'a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office,' which is 'no different from a suit against the State.'" *McCoy v. Michigan*, 369 Fed. App'x. 646, 654 (6th Cir. 2010) (quoting *Will*, 491 U.S. at 71).

The Undersigned accordingly **RECOMMENDS** that all the claims for damages against all the Defendants *in their official capacities* be **DISMISSED**. *See* 28 U.S.C. § 1915A(b)

(requiring dismissal of any part of a complaint that "seeks monetary relief from a defendant who is immune from such relief.").

The claims underlying the requests for money damages against Defendants Leasure, Barney, Williams, and Greene *in their individual capacities* are addressed in the following Sections (*see* Complaint, ¶¶ 34-39.1), as are the claims against Defendants Greene, Oppy, and Hupka for injunctive relief (*id.*, ¶¶ 40-41).

### B.      Claims against Officer Leasure

Jarrett alleges that Officer Leasure violated his First Amendment Rights against racial discrimination, and his Fourteenth Amendment right to due process "by making a racial comment" (i.e., "I got your black ass"); by planting drugs in Jarrett's cell; by not activating her body camera to establish "a qualifying event"; and by writing a false conduct report. (Complaint, ¶ 25).

Only one of these issues arguably states a claim:  Jarrett's claim that Officer Leasure planted drugs in his cell.  The Undersigned concludes, without the benefit of an answer or other briefing, that this Fourteenth Amendment *substantive* due process claim against Officer Leasure, in her individual capacity, may **PROCEED** to further development at this time.  *See Hairston v. Garlinghouse*, No. 2:22-cv-68, 2022 WL 2900891, at *8 (W.D. Mich. July 22, 2022) (quoting *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988), *overruled in other part by Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999)) ("With respect to an allegedly falsified misconduct report, the Sixth Circuit has held that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an 'egregious abuse of governmental power.'"); *but see Davis v. Gallagher,* 951 F.3d 743, 752 (6th Cir. 2020) (if such a claim can be pursued as a malicious prosecution claim (or under another specific

constitutional provision) instead of a substantive due process claim, it should be).[4]  The
Undersigned expresses no opinion on the merits of this claim at this time.

Jarrett's *procedural* due process claim against Officer Leasure for allegedly writing a
false conduct report should be dismissed.  (Complaint, ¶ 16, 25).  The Sixth Circuit has said that
"[a] prisoner has no constitutional right to be free from false accusations of misconduct."  *Brown
v. McCullick*, No. 18-2226, 2019 WL 5436159, at *4 (6th Cir. Apr. 23, 2019) (quoting *Jackson
v. Hamlin*, 61 F. App'x 131, 132 (6th Cir. 2003)); *see also Johnson v. Osborne*, No. 1:21-cv-3,
2021 WL 2077908, at *3 (S.D. Ohio Apr. 27, 2021), *report and recommendation adopted*, 2021
WL 2093258 (S.D. Ohio May 24, 2021) ("Erroneous or even fabricated allegations of
misconduct by an inmate, standing alone, do not constitute a deprivation of a constitutional
right.").

"A constitutional violation may occur, if as a result of an accusation, the Plaintiff was
deprived of a liberty interest without due process."  *Reeves v. Mohr*, No. 4:11-cv-2062, 2012 WL
275166, at *2 (N.D. Ohio Jan. 31, 2012) (citing *Sandin v. Conner*, 515 U.S. 472, 485 (1995)).
*But see Garth v. Hall*, No. 2:21-cv-47, 2021 WL 1422681, at *8-10 (W.D. Mich. Apr. 15, 2021)
(dismissing a procedural due process claim alleging that officers planted drugs in plaintiff's area,
because no liberty interest was implicated).  "To the extent that false accusations of misconduct
implicate due process concerns, the false charges 'do not constitute a deprivation of
constitutional rights where the charges are subsequently adjudicated in a fair hearing.'"  *Brown*,
2019 WL 5436159, at *4 (quoting *Cromer v. Dominguez*, 103 F. App'x 570, 573 (6th Cir.

---

[4] It is unknown whether Jarrett was criminally prosecuted (outside the RIB) for possessing these drugs.  It is also
worth noting that Jarrett has not raised a First Amendment retaliation claim against Officer Leasure.  (*See*
Complaint, ¶ 25).  If he had, this substantive due process claim would likely be subject to dismissal under *Davis*.
Likewise, a retaliation claim against Officer Leasure would likely be subject to dismissal for a lack of causation, as
discussed in Section III.C.1.

2004)). The "the minimum due process requirements for such a disciplinary hearing are: (1) written notice of the charges before the hearing, (2) an opportunity to call witnesses and present evidence, and (3) a written statement of the evidence relied upon and reason for the action taken." *Roundtree v. Dunlap*, No. 3:18-cv-1198, 2019 WL 3252912, at *5, n7 (N.D. Ohio July 19, 2019) (citing *Wolff v. McDonnell*, 418 U.S. 539 (1974)).

Here, Jarrett asserts that he was provided a hearing before the Rules Infraction Board (RIB) where he "presented his defense." (Complaint, ¶ 17; *see also* Disposition of the Rules Infraction Board, Doc. 2-1, PageID 19-20 (noting that Jarrett offered a defense, but the RIB found it "not convincing")). Although Jarrett alleges in the Complaint that there was "not a single piece of evidence" against him (Complaint, ¶ 17), he has provided this Court with a copy of the Conduct Report containing notice of the charges (Doc. 2-1, PageID 18) and the RIB Disposition, which says that the RIB relied on the "CONDUCT REPORT, INCIDENT REPORT, CONTRABAND TAG # 2022-81, PICTURES 190-22, LETTER FOM MR. MILLER STATING THAT THE ITEMS ARE K2 SOAKED PAPER AND SUBOXONE" (Doc. 2-1, PageID 19-20). The Disposition also noted that "[t]here are photos of the contraband and also there is a drug confirmation report from Investigator Miller stating the contraband was drugs as stated in the conduct report." (Doc. 2-1, PageID 19). Under these circumstances, Jarrett cannot show there was a denial of procedural due process such that would allow this claim to proceed.

The remaining claims against Officer Leasure should also be dismissed. First, "[h]arassing or degrading language by a prison official, while unprofessional and despicable, does not amount to a constitutional violation." *Mallory v. Smith,* No. 3:17-cv-P253, 2017 WL 3484690, at *3 (W.D. Ky. Aug. 14, 2017) (collecting cases); *Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012) (per curiam) (citing *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir.

1987)) ("Verbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief."). This includes the use of racial slurs. *See Millay v. Wiggins*, No. 4:21-cv-P116, 2021 WL 5763562, at *2 (W.D. Ky. Dec. 3, 2021) (and cases cited therein) (defendant's use of a racial slur was "unprofessional and deplorable" but "fails to give rise to a constitutional claim").

The bare claim of racial discrimination also fails. (*See* Complaint, ¶¶ 14, 17, 25). *See Jackson v. Madery*, 158 F. App'x 656, 659 (6th Cir. 2005), *abrogated on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018) ("vague, conclusory allegations of racial discrimination are not enough to state an equal protection claim."). Here, while problematic (and potentially relevant to the claim that is proceeding), Officer Leasure's single comment referencing Jarrett's race—which appears to be the sole basis for the allegation of discrimination—does not independently state a constitutional claim.

Furthermore, the alleged violation of ODRC policy—failing to activate a body camera—does not state a claim. (Complaint, ¶¶ 13, 25). Section 1983 does not provide a remedy for violations of state laws or regulations. *See Williams v. Burgess*, No. 5:21-cv-99, 2021 WL 5816830, at *4 (W.D. Ky. Dec. 7, 2021) (citing *Laney v. Farley*, 501 F.3d 577, 580 n.2 (6th Cir. 2007)) ("The purpose of § 1983 is to remedy violations of federal law, not state law."); *Lewellen v. Metro. Gov't of Nashville*, 34 F.3d 345, 347 (6th Cir. 1994) ("Unless a deprivation of some federal constitutional or statutory right has occurred, § 1983 provides no redress even if the plaintiff's common law rights have been violated and even if the remedies available under state law are inadequate"). And, "[c]ourts routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure." *White v. Perron*, No. 2:20-cv-247, 2021 WL 3855589, at *9 (W.D. Mich. Aug. 30, 2021) (citing *Olim v. Wakinekona*,

461 U.S. 238, 250 (1983) and other cases). Thus, "Defendants' alleged failure to comply with [a state] administrative rule or policy does not itself rise to the level of a constitutional violation." *Williams v. Burke*, No. 2:08-cv-123, 2009 WL 1788374, at *1 (W.D. Mich. June 18, 2009) (collecting cases); *Burgess*, 2021 WL 5816830, at *4 ("to the extent that Williams identifies state policies as conferring a right for a § 1983 claim, the Court dismisses that claim").

In sum, the Undersigned will permit Jarrett's Fourteenth Amendment substantive due process claim against Officer Leasure in her individual capacity to **PROCEED** to further development at this time. For clarity, this is Jarrett's claim that Officer Leasure planted drugs in his cell. (Complaint, ¶¶ 11-17). The Undersigned **RECOMMENDS** that the Court **DISMISS** the remaining claims against Officer Leasure.

### C.    Claims against Sergeant Barney and Sergeant Williams

It appears from context that Sergeant Barney and Sergeant Williams sat on the Rules Infraction Board panel that heard the charges against Jarrett arising from Officer Leasure's Conduct Report. Jarrett advances the following claims against these Defendants: (1) retaliation under the First Amendment; (2) denial of access to the courts under the First Amendment; (3) discrimination; (4) cruel and unusual punishment under the Eighth Amendment; (5) deliberate indifference to mental health and safety, presumably under the Eighth Amendment; and (6) a violation of due process under the Fourteenth Amendment. None of these claims should proceed.

#### 1.    *Retaliation under the First Amendment*

Jarrett alleges that Barney and Williams "imposed excessive sanctions" on Jarrett "even though they knew [he] was engaged in his protected conduct and needs to contact his attorney to pay his attorney fees." (Complaint, ¶ 21). He explains that his protected conduct is "his criminal appeal" (*id.*, at ¶ 29) and that "I was granted an oral hearing to void my sentence . . . and 20 days

12

later, I am retaliated against for engaging in protected conduct, my cell is shook down 3 times in

4 days," leading to the events described above.  (*Id.*, at ¶ 17).

"A retaliation claim essentially entails three elements: (1) the plaintiff engaged in

protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person

of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal

connection between elements one and two—that is, the adverse action was motivated at least in

part by the plaintiff's protected conduct."  *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.

1999).

As noted, Jarrett's alleged protected conduct is his participation in his pending appeal

and/or a hearing on a motion to void his sentence in his criminal case.[5]  (Complaint, ¶¶ 17, 21,

29).  The adverse action taken by Barney and Williams, according to Jarrett, was imposing

excessive sanctions on him after the RIB hearing.  (Complaint, ¶ 21, 29).  "An adverse action is

one that would deter a person of ordinary firmness from the exercise of the right at stake."  *King

v. Zamiara*, 150 F. App'x 485, 493 (6th Cir. 2005) (quoting *Thaddeus-X*, 175 F.3d at 396)

(cleaned up).

For the purpose of this screening, these allegations may plausibly state the first and

second elements of a retaliation claim.  *See Bell v. Johnson,* 308 F.3d 594, 607 (6th Cir. 2002)

("protected conduct, for the purposes of a First Amendment retaliation claim, encompasses a

prisoner's efforts to access the courts in direct appeals, habeas corpus actions, and civil rights

---

[5] It appears from the online docket of Jarrett's criminal case that the Cuyahoga County Common Pleas Court conducted a hearing on Jarrett's motion concerning the length of his sentence on June 8, 2022.  *See* online docket of *State v. Jarrett*, C.P. No. CR-13-574656-A, available by name or case number search at https://cpdocket.cp.cuyahogacounty.us/Search.aspx (accessed Oct. 20, 2022).  That court denied his motion the same day.  (*Id.*).  Jarrett appealed the denial on June 27, 2022.  (*Id.*).  The events described in the Complaint reportedly occurred on July 10, 2022.  (Complaint, ¶¶ 11-14).  The RIB issued its decision imposing sanctions on July 19, 2022.  (Doc. 2-1, PageID 19).

claims."); *Hill v. Lapin*, 630 F.3d 468, 474 (6th Cir. 2010) ("actions that result in more restrictions and fewer privileges for prisoners are considered adverse.").  But the Complaint does not contain sufficient factual allegations to plausibly allege the third element:  that "the adverse action was motivated at least in part by the plaintiff's protected conduct."  *Thaddeus-X*, 175 F.3d at 394.

"[C]ausation in retaliatory claims may really be considered a two-part inquiry:  A plaintiff must show both (1) that the adverse action was proximately caused by an individual defendant's acts, but also (2) that the individual taking those acts was 'motivated in substantial part by a desire to punish an individual for exercise of a constitutional right[.]'"  *King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012) (citations omitted).  Jarrett does not allege facts in the Complaint that satisfy (or address, or even suggest) the second of these factors.  The Complaint alleges only that Barney and Williams knew Jarrett was engaged in his criminal appeal.  (Complaint, ¶¶ 21, 29).  There are no facts other than mere knowledge pled; there are no allegations with respect to motivation or intent, or any explanation why Barney and Williams would want to punish Jarrett for taking an appeal.  Nor can such motivation be inferred, as the appeal itself appears to have had nothing to do with Barney or Williams or any of their colleagues.  It concerned Jarrett's argument that his sentence was constitutionally excessive because he was a juvenile when the crime occurred.  *See* Nov. 17, 2021 "Motion to Correct Unlawful / Void Sentence Per Eighth Amendment Cruel and Unusual Punishment," in Cuyahoga C.P. No. CR-13-574656-A, available by name or case number search at https://cpdocket.cp. cuyahogacounty.us/ Search.aspx (accessed Oct. 20, 2022).[6]  And Jarrett was unsuccessful in this

---

[6] Jarrett's motion (through counsel) argued:
   On May 30, 2014, via a nun-pro tunc journal entry, this Honorable Court's predecessor
   sentenced the Defendant to a term of incarceration of forty-five (45) years to life in prison for a

14

motion.  There are no facts pled that suggest Barney and Williams had any reason to retaliate against Jarrett.  In short, even if the Court accepts that Barney and Williams knew he appealed, there are no facts pled that plausibly suggest they were motivated by a desire to punish Jarrett for doing so.

Instead, Jarrett's argument appears to be that Barney and Williams knew that he was in the midst of working with his attorney on his appeal, and they imposed the excessive sanctions to prevent him from doing so.  (*See* Complaint, ¶ 21 ("Defendants Barney and Williams have collectively imposed excessive sanction against Plaintiff even though they knew Plaintiff was engaged in his Protected Conduct and need's to contact his attorney to pay his attorney's fee's and they have blocked all communication from me and my attorney, denied me any phone call's to my attorney and any access to courts have been shut down by these two Defendants.  In violation of Plaintiff's 1st Amendment [rights] against retaliation, access to courts…")).  This argument is forward-looking rather than demonstrating a past, causative link between Jarrett's protected conduct and the adverse action.  The Undersigned concludes that Jarrett has not stated a First Amendment retaliation claim on this basis.

---

homicide the Defendant was convicted of committing while a juvenile. This conviction was appealed and the transcripts of all proceedings are available to the court through the Eighth District Court of Appeals Case No. 101245. Through the transcripts it is clear that it was the intent of the sentencing court that the Defendant spend the remainder of his life in prison and that the Defendant was not to have a meaningful opportunity at parole. (Trans, at 1241).

This sentence is contrary to the case law of the Supreme Court of the United States of America and this Honorable Court should set this matter for a resentencing hearing as a trial court always maintains jurisdiction to correct a void sentence. *State v. Patrick*, 2007-Ohio-6847 (8th Dist., 2007) at *P20. A juvenile offender has the right not to be subjected to excessive punishment pursuant to the Eighth Amendment of the United States Constitution. *Rope v. Simmons*, 543 US 551, 560. The United States Supreme Court has held that juveniles may not be sentenced to terms of incarceration of life without the possibility of parole. *Miller v. Alabama*, 567 US 460 (2012).

"Motion to Correct Unlawful / Void Sentence Per Eighth Amendment Cruel and Unusual Punishment" (Nov. 17, 2021).  This Court may take judicial notice of court records that are available online to members of the public.  *See Lynch v. Leis*, 382 F.3d 642, 648 n.5 (6th Cir. 2004) (citing *Lyons v. Stovall*, 188 F.3d 327, 332 n.3 (6th Cir. 1999)).

## 2.   *Denial of Access to the Courts under the First Amendment*

As noted, Jarrett alleges that Barney and Williams denied him "any access to courts" as a result of the sanctions they imposed.  (Complaint, ¶ 21).  Under the First Amendment, prisoners have a fundamental right of access to the courts.  *Lewis v. Casey*, 518 U.S. 343, 346 (1996).  "The United States Supreme Court has established that, in order to have standing to bring a claim for denial of access to the courts, the inmate must establish that he suffered an actual injury as a result of the alleged denial."  *Winburn v. Howe*, 43 F. App'x 731, 733 (6th Cir. 2002) (citing *Lewis*, 518 U.S. at 349).  "Actual injury" is not shown "without a showing that such a claim has been lost or rejected, or that the presentation of such a claim is currently being prevented."  *Root v. Towers*, No. 00-1527, 2000 WL 1888734, at *1 (6th Cir. Dec. 21, 2000).  "In other words, an inmate who claims that his access to courts was denied fails to state a claim 'without any showing of prejudice to his litigation.'"  *Winburn*, 43 F. App'x. at 733 (quoting *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996)).

Jarrett has not alleged any such prejudice in his Complaint.  As the Undersigned said, when recommending that this Court deny Jarrett's motion for a temporary restraining order and preliminary injunction:

> Plaintiff asserts that under the RIB sanctions, he cannot contact or pay his attorney, access the courts, or research for his cases.  (Doc. 2, PageID 15-16).  He expresses particular concern that if he does not call or pay his attorney the remaining $46,000 of his $50,000 legal fee, Plaintiff's legal matters might be abandoned and dismissed.  (*Id*.; Doc. 1, PageID 5, 9).
>
> The Undersigned is not convinced that this concern merits extraordinary relief here.  First, the RIB sanction itself does not reflect that Plaintiff has been barred from "all access to courts" or to his attorney.  (Doc. 2, PageID 19).  Rather, it appears that one avenue of communication has been closed; he "cannot use my phone tablet for 6 months" to call his attorney.  (Doc. 1, PageID 9; Doc. 2, PageID 15-16, 19).  There is no allegation that Plaintiff cannot write to his attorney, or that his attorney cannot

16

write to him.  The status of his attorney's ability to visit is unclear.[7]  Moreover, Plaintiff's claim that he has lost "all access" to the courts is undermined by the fact that he did, in fact, access this Court.  He filed this lawsuit just days after the RIB imposed these restrictions.  (*See* Doc. 1, PageID 4, 11 (the RIB hearing occurred on July 19, 2022; Plaintiff submitted his Complaint on July 28, 2022)).

(Report and Recommendation, Doc. 3, PageID 25).

Jarrett does not allege that his appeal has been dismissed.  It does not otherwise appear

that it has.  *See* online docket of *State v. Jarrett*, A.C. No. CA-22-111659, available at

https://cpdocket.cp.cuyahogacounty.us/COA_CaseInformation_Docket.aspx?q=N1XyQEp

PWSFY7OnyRIU04w2 (accessed Oct. 20, 2022).  That docket also reflects that Jarrett is able to

communicate with his attorney.  A recent motion filed by Jarrett's counsel says:

> Now comes the Defendant-Appellant, by and though the undersigned counsel, and respectfully requests that this Honorable Court EXTEND the time for filing the instant appeal. The reason for such request is because the undersigned counsel is in receipt of correspondence from the Defendant-Appellant requesting that they speak prior to the filing of the Appellate brief. As the Defendant-Appellant is currently incarcerated at the Ohio Department of Rehabilitation and Corrections, the undersigned counsel is in the process of arranging an attorney call through the institution. This is an exigent circumstance, and a twenty (20) day extension is requested.

Sep. 20, 2022 "Motion to Extend Time," available on the appeal case docket.

Jarrett's speculation that he might suffer prejudice in the future is insufficient to state an

access-to-courts claim.  *See Diehl v. Hunter*, No. 12-11522, 2013 WL 2480688, at *6 (E.D.

Mich. June 10, 2013) (citing *McCurtis v. Wood*, 76 F. App'x 632 (6th Cir. 2003)) ("conclusory,

speculative assertions of prejudice are insufficient to state a claim for denial of access to the

courts").  Because he has not alleged any actual prejudice, this claim should be dismissed.

---

[7] The RIB Disposition notes a 90-day visiting restriction, as well as a "2 year visiting restriction (Immediate Family Only)." (Doc 2, PageID 19). In any event, Plaintiff's concern does not appear to be that his attorney cannot visit him, but that Plaintiff cannot call his attorney.

### 3. _Discrimination_

Jarrett includes in his Complaint a single allegation that Barney and Williams' actions in imposing sanctions on him constitute discrimination. (Complaint, ¶ 21). There is no further explanation of this claim. The nature of the alleged discrimination is unclear. That is, it is unclear whether these Defendants allegedly discriminated against Jarrett because he is black, or a prisoner, because he reportedly had drugs in his cell, or for some other reason.

The Undersigned recognizes that "[p]risoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." _Wolff v. McDonnell_, 418 U.S. 539, 556 (1974) (citing _Lee v. Washington_, 390 U.S. 333 (1968)). But Jarrett's bare allegation of discrimination fails to state such a claim against Barney and Williams. _See Center for Bio-Ethical Reform, Inc. v. Napolitano_, 648 F.3d 365, 379 (6th Cir. 2011) (quoting _Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich._, 470 F.3d 286, 299 (6th Cir.2006)) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'"). Jarrett makes no such allegations. His discrimination claim should be dismissed.

### 4. _Cruel and Unusual Punishment under the Eighth Amendment_

Jarrett alleges that the list of sanctions imposed by the RIB amount to cruel and unusual punishment. (Complaint, ¶¶ 17, 21, 29). But "[n]ot every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny[.]" _Whitley v. Albers_, 475 U.S. 312, 319 (1986). "After incarceration, only the 'unnecessary and wanton infliction of pain' constitutes cruel and unusual punishment forbidden by the Eighth Amendment." _Id._ (quoting _Ingraham v. Wright_, 430 U.S. 561, 670 (1977) (quoting _Estelle v._

*Gamble*, 429 U.S. 97, 103 (1976))) (cleaned up).  Here, Jarrett does not allege that pain was

unnecessarily and wantonly inflicted on him.   He does not allege, for examples, that Barney and

Williams used excessive physical force against him, or ordered him to be held under conditions

of confinement that constitute an extreme deprivation of the minimal civilized measure of life's

necessities.  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Rhodes v. Chapman*, 452 U.S. 337, 347

(1981).  Rather, he claims to be innocent of the allegations in the Conduct Report and asserts that

the punishment caused him pain.  (Complaint, ¶ 31).

Jarrett identifies two ways in which he has suffered.  First, he alleges that while in

segregation, he learned that his best friend had been murdered.  (Complaint, ¶ 31).  But this pain

is not and cannot plausibly be attributed to these Defendants.  Second, Jarrett alleges that he "has

suffered [psycho]logically, mentally and emotionally; by being told I cannot use my phone tablet

for 6 months," and because, "more importantly," he still has to pay his attorney.  (Complaint, ¶¶

31, 29).  Setting aside the question of how a lack of access to a tablet phone prevents Jarrett from

paying his attorney, the Undersigned concludes that this allegation does not rise to the level of

cruel and unusual punishment under the Eighth Amendment, if such a claim exists in this

context.  *See generally Estelle*, 429 U.S. at 102 (noting that "the primary concern of the drafters

[of the "Cruel and Unusual Punishments clause] was to proscribe 'torture(s)' and other

'barbar(ous)' methods of punishment."); *Ishaaq v. Compton*, 900 F. Supp. 935, 943-44 (W.D.

Tenn. 1995) (citations omitted) ("To the extent that plaintiff is attempting to assert an Eighth

Amendment claim based on his disciplinary conviction, he has no claim. Neither classification or

housing assignments, nor confinement to segregation, either administrative or punitive,

implicates the cruel and unusual punishments clause of the Eighth Amendment."); *Howell v.*

*Hamilton Cnty. Justice Ctr.*, No. 1:15-cv-303, 2015 WL 2406082, at *5 (S.D. Ohio May 20,

2015), *report and recommendation adopted*, 2015 WL 3852912 (S.D. Ohio June 22, 2015)

("Any claim by plaintiff that his 12-day confinement in 'lock-in' in and of itself constitutes cruel

and unusual punishment under the Eighth Amendment is meritless."); *Harden-Bey v. Rutter,* 524

F.3d 789, 795 (6th Cir. 2008) (quoting *Murray v. Unknown Evert,* 84 F. App'x 553, 556 (6th Cir.

2003)) ("Because placement in segregation is a routine discomfort that is part of the penalty that

criminal offenders pay for the offenses against society, it is insufficient to support an Eighth

Amendment Claim.").  The cruel and unusual punishment claim should be dismissed.

### 5. <u>Deliberate Indifference to Mental Health and Safety under the Eighth Amendment</u>

Jarrett alleges that Barney and William acted "with deliberate indifference to [his] mental

health and safety by imposing excessive sanctions."  (Complaint, ¶¶ 29, 21).  As this allegation

suggests, the Eighth Amendment "forbids prison officials from 'unnecessarily and wantonly

inflicting pain' on an inmate by acting with 'deliberate indifference' toward the inmate's serious

medical needs."  *Blackmore v. Kalamazoo Cnty*., 390 F.3d 890, 895 (6th Cir. 2004) (quoting

*Estelle*, 429 U.S. at 104).

> The Eighth-Amendment framework for deliberate indifference claims has an
> objective and a subjective component. *Griffith [v. Franklin Cnty., Kentucky*, 975
> F.3d 554, 567 (6th Cir. 2020)]; *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct.
> 1970, 128 L.Ed.2d 811 (1994). "The objective component requires a plaintiff to
> prove that the alleged deprivation of medical care was serious enough to violate the
> [Constitution]." *Griffith*, 975 F.3d at 567 (quoting *Rhinehart v. Scutt*, 894 F.3d 721,
> 737 (6th Cir. 2018)). The subjective component requires a plaintiff to show that
> "each defendant subjectively perceived facts from which to infer substantial risk to
> the prisoner, that he did in fact draw the inference, and that he then disregarded that
> risk by failing to take reasonable measures to abate it." *Id*. at 568 (quoting
> *Rhinehart*, 894 F.3d at 738). This is a high standard of culpability, "equivalent to
> criminal recklessness." *Id*.

*Greene v. Crawford Cnty., Michigan*, 22 F.4th 593, 605-06 (6th Cir. 2022).

Jarrett's claim fails to allege the required elements.  He does not identify an objectively

serious medical need, nor does he allege that Barney and Williams acted with the appropriate

level of culpability. (Complaint, ¶¶ 17, 21, 29). Instead, this claim is no more than "labels and conclusions," which are insufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). It should be dismissed.

### 6. *Violation of Due Process under the Fourteenth Amendment*

Jarrett also characterizes the RIB sanctions as a violation of his due process rights. (Complaint, ¶¶ 21, 29). As alluded to above, "[t]he Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property[.]" *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). "[T]hose who seek to invoke its procedural protection must establish that one of these interests is at stake." *Id*. It appears that Jarrett is seeking to invoke a liberty interest.

"Prisoners have narrower liberty and property interests than other citizens as 'lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" *Johnpillai v. Chambers-Smith*, No. 3:21-cv-2037, 2022 WL 2986046, at *3 (N.D. Ohio July 28, 2022) (quoting *Sandin v. Conner*, 515 U.S. 472, 485 (1995)). "Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Sandin*, 515 U.S. at 485.

A liberty interest may arise where a prison disciplinary sanction "will inevitably affect the duration of [the prisoner's] sentence." *Sandin*, 515 U.S. at 487. "[A] state-created right to good-time credits, which could be forfeited only for serious misbehavior, constitute[s] a liberty interest[.]" *Vitek v. Jones*, 445 U.S. 480, 488 (1980) (citing *Wolff v. McDonnell*, 418 U.S. 539 (1974)). Alternatively, "[a]n inmate establishes a liberty interest when a change in conditions of confinement 'imposes atypical and significant hardship on [him] in relation to the ordinary incidents of prison life.'" *Williams v. Lindamood*, 526 F. App'x 559, 562 (6th Cir. 2013)

21

(quoting *Sandin,* 515 U.S. at 484). "To determine whether changed conditions are 'atypical and significant,' a reviewing court considers both the duration and the nature of the more restrictive confinement relative to 'prison norms and to the terms of the individual's sentence.'" *Id.* (quoting *Harden-Bey v. Rutter*, 524 F.3d 789, 792-93 (6th Cir. 2008)).

Confinement in segregation generally does not rise to the level of an atypical and significant hardship except "in extreme circumstances," such as when a prisoner is subject to an excessively long or indefinite administrative segregation. *Joseph v. Curtin,* 410 F. App'x. 865, 868 (6th Cir. 2010) (citing *Harden-Bey*, 524 F.3d at 795); *see Harris v. Caruso,* 465 F. App'x. 481, 484 (6th Cir. 2012) (a prisoner's 8-year confinement in segregation was of "atypical duration" and presented a cognizable liberty interest). Assignment to restrictive housing likewise does not implicate a liberty interest. *See Perry v. Erdos*, No. 1:22-cv-178, 2022 WL 2256901, at *3 (S.D. Ohio June 22, 2022), *report and recommendation adopted*, 2022 WL 3083522 (S.D. Ohio Aug. 3, 2022) (citations omitted) ("Courts in this District have expressly held that assignment to extended restrictive housing, ODRC's most restrictive security level, does not implicate a due process liberty interest").

Similarly, "[a]n increase in security classification does not constitute an atypical and significant hardship in relation to the ordinary incidents of prison life because a prisoner has no constitutional right to remain incarcerated in a particular prison or to be held in a specific security classification." *Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005) (cleaned up); *see also Moody v. Daggett*, 429 U.S. 79, 88 n.9 (1976) (change in "prisoner classification" does not implicate a due process right); *Harris v. Truesdell*, 79 F. App'x 756, 759 (6th Cir. 2003) (holding that neither "punishment of more than 60 days of punitive segregation" nor a change in security classification "give rise to a protected Fourteenth Amendment Liberty interest"); *Carter*

22

*v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) (holding that an inmate's placement in disciplinary confinement or a change in security classification or housing assignment did not implicate the Due Process Clause).

Institutional transfers generally do not implicate a liberty interest. *See Workman v. Wilkinson*, 23 F. App'x 439, 440 (6th Cir. 2001) (citing *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976)) ("Even in the absence of a disciplinary conviction, a state may transfer a prisoner to a less desirable facility without implicating the Due Process Clause.")); *Wilkinson v. Austin*, 545 U.S. at 221 (citing *Meachum,* 427 U.S. at 225) ("the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement."); *Moody*, 429 U.S. at 88 n.9 ("no due process protections were required upon the discretionary transfer of state prisoners to a substantially less agreeable prison, even where that transfer visited a 'grievous loss' upon the inmate."). There is one notable exception: an inmate's transfer to Ohio State Penitentiary, Ohio's "supermax" prison, does impose an atypical and significant hardship, given the combination of extreme isolation of inmates, prohibition of almost all human contact, indefinite duration of assignment, and disqualification for parole consideration of otherwise eligible inmates. *See Wilkinson v. Austin*, 545 U.S. at 223-24.

"Furthermore, prisoners do not have a protected liberty interest in visitation or access to the prison commissary." *Johnpillai*, 2022 WL 2986046, at *3 (citing *Bazzetta v. McGinnis*, 430 F.3d 795, 804-05 (6th Cir. 2005) and *Bailey v. Decker*, No. 19-1197, 2020 WL 1609505, at *3 (W.D. Tenn. Apr. 1, 2020)). They also do "not have a liberty interest in phone privileges to which due process can attach." *Wymes v. Laughton*, No. 4:21-cv-10700, 2021 WL 3207121, at

23

*3 (E.D. Mich. July 29, 2021);[8] *Uraz v. Ingham Cnty. Jail*, No. 1:19-cv-550, 2019 WL 4292394, at *6 (W.D. Mich. Sept. 11, 2019) ("the 10-month limitation on phone privileges did not violate Plaintiff's right to procedural due process, because he did not have a liberty interest in unrestricted telephone use.").  The Undersigned sees no reason the same should not be true of the apparent *personal* "phone tablet" privileges that appear to be of the greatest concern to Jarrett.[9] (Complaint, ¶¶ 17, 21, 29, 31).  Finally, "Prisoners do not have any constitutionally protected right to watch television or listen to the radio[.]"  *Mize v. Woosley*, No. 4:10cv-P119, 2010 WL 4323073, at *2 (W.D. Ky. Oct. 26, 2010).

In the Complaint, Jarrett has not alleged that the RIB sanctions necessarily lengthened his prison sentence or withdrew his good-time credits, or that he was transferred to Ohio State Penitentiary.[10]  The sanctions he describes do not otherwise invoke a protected liberty interest, as they do not impose an atypical and significant hardship on him.[11]  (Complaint, ¶ 17).

---

[8] *Wymes* cites the following cases:
> *See Coleman v. Long*, 772 Fed. Appx. 647, 649 (10th Cir. 2019) (holding that restrictions on telephone privileges did not infringe on a liberty interest that would be protected by the Due Process Clause); *Hester v. Mamukuyomi*, 750 Fed. Appx. 275, 277 (5th Cir. Sept. 11, 2018) (loss of telephone privileges did not implicate due process); *Davis v. Small*, 595 Fed. Appx. 689, 691 (9th Cir. 2014) (holding that the Due Process Clause does not give rise to a protected liberty interest in phone privileges); *Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994) (prisoner "has no right to unlimited telephone use").

[9] Usually, personal phones such as cell phones are considered contraband in prison.  *See, e.g.*, *Bethel v. Jenkins*, 988 F.3d 931, 939 (6th Cir. 2021) (noting that an Ohio prison warden had discussed how contraband like cell phones could be clandestinely transferred into a prison, and how policy changes were implemented to change that).

[10] As noted above, Jarrett was transferred to Toledo Correctional Institution after the Complaint was filed.

[11] Furthermore,
> [E]ven assuming Plaintiff had a protected liberty interest, **a federal court's ability to review prison disciplinary procedures is very limited, and a court must uphold a prison disciplinary board's determination as consistent with due process as long as the prisoner received basic procedural protections and the prison disciplinary committee's findings are supported by "some evidence" in the record**. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445 at 455 (1985). "Some evidence," as its name suggests, is a lenient standard. *See Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000). It is satisfied where "there is any evidence in the record that could support the conclusion reached by the disciplinary board," even when the evidence used against the prisoner

24

Accordingly, the Undersigned concludes that Jarrett has not stated a claim on which relief may be granted for a violation of the Due Process Clause of the Fourteenth Amendment. *See Roundtree v. Dunlap*, No. 3:18-cv-1198, 2019 WL 3252912, at *4-6 (N.D. Ohio July 19, 2019) (rejecting claim "that defendants violated his constitutional right to due process because he was placed in a higher security classification as a result of a false conduct report and unsupported conviction of assault after a RIB hearing). The Undersigned accordingly **RECOMMENDS** that the Court **DISMISS** the due process claim, and all the other claims discussed above, that are raised against Sergeant Barney and Sergeant Williams, for failure to state a claim on which relief may be granted.

### D.   Claims against Larry Greene

Jarrett includes a few distinct allegations against Larry Greene, who is the SOCF Warden's Representative or Warden's Assistant. (Complaint, ¶¶ 6, 19). Jarrett initially says he "is only suing [Greene] for a T.R.O. toward execution of any 4-B Placement, until Plaintiff's claims can be more fully assessed." (Complaint, ¶ 19). But he also alleges that Greene "is personally involved in not correcting the violation" of Jarrett's rights and "not enforcing appropriate sanction, encouraging the violation." (Complaint, ¶ 22). Later, Jarrett asserts that Greene, apparently along with Barney and Williams, imposed the sanctions. (Complaint, ¶ 31).

The claim for injunctive relief is addressed in the next Section. This Section considers Jarrett's apparent claims that Greene either participated in, encouraged, or did not correct the

---

"might be characterized as meager." *Hill*, 472 U.S. at 455, 457. Although Plaintiff contests the propriety of the disciplinary charges and determination against him, his Complaint does not allege cogent facts plausibly suggesting he was denied requisite basic procedural protections, and it is apparent that "some evidence" existed to support the disciplinary determination made.

*Spencer v. Sheldon*, No. 22-cv-210, 2022 WL 1803341, at *2-3 (N.D. Ohio June 2, 2022) (emphasis added). *See also Johnpillai*, 2022 WL 2986046, at *2 (citing *Superintendent, Mass. Corr. Inst. at Wolpole v. Hill*, 472 U.S. 445, 455 (1985) (wherein a district judge screening a prisoner complaint about RIB sanctions said: "My ability to review prison disciplinary proceedings is limited. I may not re-weigh the evidence presented to the disciplinary board or re-examine its credibility determinations.").

violations of due process under the Fourteenth Amendment, the denial of access to the courts under the First Amendment, and the excessive sanctions. (Complaint, ¶ 26). None of these claims should proceed.

First, "individuals sued in their personal capacity under § 1983 are liable only for their own unconstitutional behavior." *Hollis v. Erdos*, 480 F. Supp. 3d 823, 833 (S.D. Ohio May 12, 2020) (citing *Murphy v. Grenier*, 406 F. App'x 972, 974 (6th Cir. 2011)). To the extent Jarrett is suggesting that Greene supervised Barney and Williams, he fails to state a claim; "a supervisor cannot be held liable simply because he or she was charged with overseeing a subordinate who violated the constitutional rights of another." *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) (citing *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006)). For such a claim to proceed, "a plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Crawford v. Tilley*, 15 F.4th 752, 761 (6th Cir. 2021) (quoting *Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 865 (6th Cir. 2020) (cleaned up). The Complaint does not include any such *factual* allegations. Although Jarrett alleges that Greene encouraged the violations, the Complaint contains no facts showing how he did so. (Complaint, ¶ 22). Simply using the conclusory label is insufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Second, to the extent Jarrett is alleging against Greene the same claims he raises against Barney and Williams with respect to the RIB sanctions, those claims fail for the same reasons discussed in Section III.C above.

The Undersigned therefore **RECOMMENDS** that the Court **DISMISS** the claims against Greene for his actions or inactions with respect to the RIB sanctions.

26

### E.    Claims for Injunctive Relief against Greene, Hupka, and Oppy

Jarrett sued Kerrie Hupka (Director of the Bureau of Classification), and J. Oppy (Unit Manager Administrator, Security Classification Supervisor, and Serious Misconduct Panel (SMP) Chairman) for the sole purpose of a getting a temporary restraining order (TRO) and preliminary injunction to prevent the results of the anticipated security level increase. (Complaint, ¶¶ 5, 20, 27; 7, 18, 28, 40).  He sued Greene for this purpose as well.  (*Id.*, ¶ 19). Jarrett specifically says that Hupka and Oppy have not violated his rights.  (*Id.*, ¶¶ 27-28).

This Court has already denied Jarrett's request for a TRO and preliminary injunction to prevent his anticipated level increase from going into effect.  (*See* TRO Motion, Doc. 2; Entry and Order, Doc. 4).  And, Jarrett has already been transferred to a new institution, likely as a result of the SMP hearing and the resulting level increase.  To the extent that the SMP hearing has already been held, Jarrett's level increased, and Jarrett transferred because of it, Jarrett's claims for injunctive relief to prevent those events should be dismissed as moot.  *See Fredette v. Hemingway*, 65 F. App'x 929, 931 (6th Cir. 2003) (citing *Honig v. Doe*, 484 U.S. 305, 317 (1988)) ("Article III of the Constitution states that federal courts 'may only adjudicate actual, ongoing controversies.'").

As the only relief requested against Hupka and Oppy has already been denied by the Court, the Undersigned **RECOMMENDS** that the Court **DISMISS** them from this case.

Relatedly, Jarrett seeks "a permanent injunction that prevents ODRC in their official capacity from raising my level from 4-A to 4-B and removing all sanctions."  (Complaint, ¶ 41). This claim for injunctive relief should also be dismissed, as the ODRC is not a party to this case, and would not be a proper defendant had it been named as a party.  *See Vizcarrondo v. Ohio Dep't of Rehab. & Corr.*, No. 1:18-cv-1255, 2019 WL 6251775, at *5 (N.D. Ohio Nov. 22, 2019) ("multiple courts have found that ODRC is not a 'person' subject to suit under 42 U.S.C. §

1983."); *Peeples v. Ohio Dep't of Rehab. & Corr.*, 64 F.3d 663 (6th Cir. 1995) (affirming the district court's dismissal of suit against the ODRC which said that "the ODRC is not a 'person'") (unreported table case)

The Undersigned accordingly **RECOMMENDS** that the Court **DISMISS** all the claims for injunctive relief.

## IV.  <u>CONCLUSION</u>

The undersigned Magistrate Judge, having conducted the initial screening of Plaintiff Jarrett's Complaint as required by law, **ORDERS** that:

1.  Plaintiff may **PROCEED** at this time on his Fourteenth Amendment substantive due process claim against Defendant Leasure in her individual capacity as discussed in Section III.B (alleging that she planted drugs in his cell).

2.  Plaintiff's request for a status conference to set a preliminary injunction hearing (Complaint, ¶ 40) is **DENIED**, as the Court has denied Plaintiff's motion for a TRO and preliminary injunction.  (*See* Doc. 4).

3.  The Clerk of Court is **DIRECTED** to send to Plaintiff one blank Summons form along with this Order and Report and Recommendations.  These documents shall be sent to Jarrett at the address on the docket as well as at Toledo Correctional Institution.  Along with the mailing to Toledo Correctional Institution, the Clerk shall include a courtesy copy of the Court's Entry and Order Adopting Report and Recommendations, which denied Plaintiff's motion for a TRO and preliminary injunction.  (Doc. 4).

4.  Plaintiff is responsible for having the Summons and Complaint served on Defendant Leasure within the time allowed by Fed. R. Civ. P. 4(m) and must furnish the necessary copies to the person who makes service.  Fed. R. Civ. P. 4(c)(1).  If Plaintiff wishes to have the Clerk

serve process, he shall submit to the Clerk the following documents **within THIRTY days**:  a

completed Summons Form, a copy of the Complaint, and an addressed envelope bearing

sufficient certified mail postage to serve the Summons and Complaint.

5.    Plaintiff shall serve upon Defendant (or, if appearance has been entered by counsel,

upon Defendant's attorney) a true and correct copy of every further pleading or other document

he submits to the Court for filing.  Plaintiff shall include with each further filing a Certificate of

Service stating when he mailed a copy of his document to Defendant or Defendant's counsel.

Any paper received by a District Judge or Magistrate Judge which has not been filed with the

Clerk or which fails to include a Certificate of Service will be disregarded by the Court.

6.    Plaintiff must keep this Court informed of his current address, and promptly file a

Notice of New Address if he is released or transferred.

In addition, the undersigned Magistrate Judge **RECOMMENDS** that:

A.    The Court **DISMISS** the remaining claims in Plaintiff's Complaint (Doc. 1)

pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted

and/or because the claims seek monetary relief from a defendant who is immune from such

relief.  This includes Plaintiff's official capacity claims for damages, his remaining claims

against Defendant Leasure (as discussed in Section III.B), and all the claims against Defendants

Barney, Williams, Greene, Hupka, and Oppy.

B.    The Court **CERTIFY** pursuant to 28 U.S.C. § 1915(a)(3) that, for the reasons

discussed above, an appeal of any Order adopting this Report and Recommendations would not

be taken in good faith, and therefore, deny Plaintiff leave to appeal *in forma pauperis.  See*

*McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

29

**V.**     <u>**Notice Regarding Objections to this Report and Recommendation**</u>

If any party objects to this Report and Recommendation ("R&R"), the party may serve and file specific, written objections to it within **FOURTEEN (14) DAYS** after being served with a copy thereof. Fed. R. Civ. P. 72(b). All objections shall specify the portion(s) of the R&R objected to and shall be accompanied by a memorandum of law in support of the objections. The Court may extend the 14-day objections period if a timely motion for an extension of time is filed.

A Judge of this Court will make a de novo determination of those portions of the R&R to which objection is made. Upon proper objection, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the R&R will result in a waiver of the right to have the District Judge review the R&R de novo, and will also operate as a waiver of the right to appeal the decision of the District Court adopting the R&R. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED.**


October 24, 2022                               *s/Stephanie K. Bowman*
                                                       Stephanie K. Bowman
                                                       UNITED STATES MAGISTRATE JUDGE